[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15020
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cr-00068-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRELL ANTONIO ROBERTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(August 30, 2018)

Before ED CARNES, Chief Judge, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Jerrell Antonio Roberts appeals his sentence of 87 months imprisonment and

36 months supervised release. He contends that the district court improperly applied the United States Sentencing Guidelines.

## I.

In September 2016 officers with the Violent Crimes Task Force arrested Roberts and Aston Manor in Chatham County, Georgia. During the arrest, the officers found a firearm that Roberts had dropped on the ground and $1,000 on his person. On Manor they found a firearm and a small quantity of marijuana. And in Roberts' car, which the two men had fled from before the arrest, the officers found 33 Xanax pills in an unlabeled prescription bottle in the passenger door. When asked, Manor told the officers that the pills "were not his" and were "not in his possession." A Georgia grand jury returned a three count indictment against Roberts, charging him with: (1) possession of a firearm by a convicted felon; (2) possession of a controlled substance (Xanax) with intent to distribute; and (3) possession of a firearm in furtherance of a drug trafficking crime.

A few days after his arrest, Roberts made multiple telephone calls to Manor from the Chatham County Jail asking him to provide an affidavit taking responsibility for one of the charges against Roberts because Manor did not have a record and would receive only a probation sentence. Manor responded to the request by asking "How? They weren't even around me" and repeating "How am I gonna tell them folks that's my shit? I mean how? How? The shit wasn't even

2

around me or by me."[1]  Roberts told Manor that he was Roberts' "guardian angel" and that Roberts "need[ed Manor] like Christians need Jesus."  Roberts asked Manor if he was scared of being sentenced to probation and told him that "you're either going to take my lick or leave me high and dry, one of the two."

Ten months later Manor signed an affidavit claiming the Xanax were his. He swore that he possessed the pills without Roberts' knowledge and that he had not been threatened or coerced to make that statement.  After that the government sought to add an obstruction of justice charge against Roberts and called Manor to testify before a federal grand jury.  When asked about the affidavit that he had signed only two weeks earlier, Manor said that he could not remember who was with him at the time it was signed.  When asked whether there was a reason for his inability to remember, Manor responded, "I don't want to say."  And he invoked the Fifth Amendment when asked where he got the Xanax; whether he remembered denying ownership of the pills when talking to police; who was with him when he signed the affidavit; whether Roberts was present; and whether he talked to Roberts while Roberts was in jail.

Roberts later entered a written plea agreement, in which he pleaded guilty to possession of a firearm by a felon, and the remaining counts were dismissed.  For

---

[1] Roberts did not explicitly reference Xanax during the phone call, but it was not clearly erroneous for the court to find that Manor's comment that "[t]hey weren't even around me," could have been made only in reference to the Xanax pills.

sentencing, Roberts' presentence investigation report assigned him a base offense level of 20 under United States Sentencing Guideline § 2K2.1(a)(4)(A) (Nov. 2016). It applied a four-level increase because Roberts possessed the firearm in connection with another felony offense, id. § 2K2.1(b)(6)(B), and a two-level increase for obstruction of justice, id. § 3C1.1. With a total offense level of 26 and a criminal history category of II, his guidelines range was 70 to 87 months imprisonment. Roberts objected and argued that neither enhancement was warranted because the Xanax belonged to Manor. The probation officer responded that recorded jail telephone calls showed that Roberts possessed the Xanax pills and convinced Manor to take responsibility for them.

Roberts filed a presentencing memorandum reasserting his objections and disagreeing with the probation officer's analysis of his conversations with Manor. At the hearing, the district court acknowledged Roberts' objections to the PSR and invited Roberts to present any further argument. Roberts called Manor as a witness, and Manor testified that he had been charged with possession of Xanax, that the Xanax pills belonged to him, and that no one had made threats to get him to the hearing. But when asked about his conversations with Roberts, Manor testified that he remembered Roberts calling him from jail, but had no memory of the contents of their conversations. He also said that he did not recall telling the officers on the night of the arrest that the pills were not his.

The district court found that Manor was evasive in his grand jury testimony and that it was impossible to determine whether the statements in his affidavit were true. It also found that a preponderance of the evidence showed that Roberts encouraged Manor to give an affidavit taking responsibility for the Xanax. Based on those findings, the court denied Roberts' objections and adopted the PSR in its entirety.

The court sentenced Roberts to 87 months imprisonment and 36 months supervised release. This is his appeal. Roberts contends that the district court misapplied the guidelines when it adopted the two sentence enhancements.

## II.

"We review de novo the district court's interpretation and application of the sentencing guidelines" and its decision "applying enhancements to specific offense characteristics." United States v. Amedeo, 370 F.3d 1305, 1312 (11th Cir. 2004) (quotation marks omitted). But we review only for clear error the court's factfindings related to the imposition of an enhancement, id., giving "substantial deference to the court's credibility determinations at sentencing," United States v. Plasencia, 886 F.3d 1336, 1343 (11th Cir. 2018) (quotation marks omitted). A district court's finding that a firearm was possessed "in connection with" another felony offense is a factfinding that this Court reviews only for clear error. United States v. Whitfield, 50 F.3d 947, 949 & n.8 (11th Cir. 1995).

A.

First, Roberts contends that the court erred by applying a two-level enhancement for obstruction of justice. An obstruction of justice enhancement applies when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and the obstruction relates to the defendant's offense of conviction or related conduct. U.S.S.G. § 3C1.1. Obstruction conduct includes "threatening, intimidating, or otherwise unlawfully influencing" a witness or "suborning, or attempting to suborn, perjury." Id., cmt. n.4(A), (B). One way that a defendant unlawfully influences a potential witness is by urging the witness to lie. United States v. Amedeo, 370 F.3d 1305, 1319 (11th Cir. 2004). And he suborns perjury by knowingly procuring another to provide false testimony, which tends to influence or affect the issue under determination. Plasencia, 886 F.3d at 1346.

The district court did not clearly err when it found that Roberts encouraged Manor to give an affidavit taking responsibility for the Xanax. The recorded phone conversations show that Roberts called Manor from jail, asked him to file an affidavit, and when Manor pushed back, told him that "you're either going to take my lick or leave me high and dry, one of the two." Before and during that conversation Manor denied owning the Xanax and repeatedly asked Roberts how

6

he could expect Manor to claim the pills were his.  But after talking with Roberts, Manor changed course and signed the affidavit claiming the pills, which was intended to lower Roberts' sentence.  Those facts support the court's conclusion that Roberts "unlawfully influenc[ed]" Manor and "willfully obstructed . . . the administration of justice with respect to the investigation, prosecution, or sentencing" of Roberts' case.  The district court did not err by applying a two-level enhancement under § 3C1.1.[2]  See Amedeo, 370 F.3d at 1319.

## B.

Next, Roberts contends that the district court erred by applying a four-level enhancement for using or possessing a firearm in connection with a drug trafficking offense.  See U.S.S.G. § 2K2.1(b)(6)(B); id. cmt. n.14(B) (explaining that the enhancement applies when "a firearm is found in close proximity to drugs . . . because the presence of the firearm has the potential of facilitating another felony offense or another offense").  Roberts argues that the district court erred when it found that the Xanax belonged to him, and for that reason, erred

---

[2] At the end of the sentence hearing, the court asked Roberts if he would like to make a personal statement for mitigation of his sentence.  Roberts responded that the phone calls with Manor were not about the Xanax pills but about Roberts' firearm.  The court asked whether Roberts meant that he had asked Manor to claim the firearm, and Roberts said yes.  It then questioned why it was not obstruction if Roberts was trying to get Manor to take responsibility for Roberts' firearm, and Roberts replied, "[d]ue to his record, sir."  That exchange also shows that the court did not clearly err when it found the obstruction of justice enhancement was warranted.  See Plasencia, 886 F.3d at 1346.

7

when it found that his possession of a firearm was "in connection with" the unlawful possession of Xanax.

Notwithstanding Manor's affidavit, the district court did not clearly err in finding that the Xanax actually belonged to Roberts. Throughout Manor's testimony before the grand jury and at the sentence hearing, he invoked the Fifth Amendment or claimed that he could not remember facts from the night of the arrest and the day that he prepared his affidavit. As for the affidavit, Manor waited 10 months before filing it and did so only after Roberts insisted. His confessions are inconsistent with what he told officers on the night of the arrest. Given those inconsistencies, the district court did not clearly err when it found that Manor's testimony was not credible, decided that the Xanax actually belonged to Roberts, and applied the enhancements. See id. § 2K2.1(b)(6)(B); id. § 3C1.1.

**AFFIRMED.**

8